# 20-1399-cv

# United States Court of Appeals

### *for the*

# Second Circuit

---

MAUVAREEN BEVERLEY,

*Plaintiff-Appellant,*

— v. —

NEW YORK CITY HEALTH AND HOSPITALS CORP., MITCHELL KATZ, President and Chief Operating Office of NYC Health and Hospitals Corp. and ndividually, STANLEY BREZENOFF, Interim President and Chief Operating Office of NYC Health and Hospitals Corp. and Individually, PLACHIKKAT ANANTHARAM, Chief Financial Officer of NYC Health and Hospitals Corp. and Individually,

*Defendants-Appellees.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFF-APPELLANT

SANDRA D. PARKER
LAW OFFICE OF SANDRA D. PARKER
*Attorney for Plaintiff-Appellant*
110 East 59th Street, Suite 3200
New York, New York 10022
(212) 317-2883

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITY......................................................... iii

JURISDICTIONAL STATEMENT.......................................... 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW.................... 3

    I.    WHETHER THE DISTRICT COURT
          APPLIED THE CORRECT STANDARD
          OF REVIEW IN DISMISSING ALL
          CLAIMS ASSERTED PURSUANT TO
          42 U.S.C. SEC. 1983............................................. 3

    II.   WHETHER THE DISTRICT COURT
          APPLIED THE LIBERAL AND NON-
          EVIDENTIARY STANDARD TO THE
          NYCHRL CLAIMS.............................................. 3

STATEMENT OF THE CASE................................................. 3

    Factual Background.......................................................... 3

    Procedural History.......................................................... 12

    District Court Decision.................................................... 13

SUMMARY OF ARGUMENTS.............................................. 14

ARGUMENT.................................................................... 16

i

POINT I

    THE FIRST AMENDED COMPLAINT
    ASSERTS PLAUSIBLE CLAIMS OF
    DISPARATE TREATMENT
    AND RETALIATION PURSUANT TO
    42 U.S.C. sec. 1983.............................................................    16

POINT II

    THE DISTRICT COURT FAILED TO
    APPLY THE LIBERAL AND NON
    EVIDENTIARY STANDARD TO THE
    NYCHRL CLAIMS.............................................................    23


CONCLUSION...........................................................................    25

# TABLE OF AUTHORITY

## Cases

*Amnesty America v. Town of W. Hartford*
      361 F. 3d 113 (2d Cir. 2004)............................................................   23

*Brown v. Daikin America, Inc.*
      756 F. 3d 219 (2d Cir. 2014)......................................................  20, 21, 22

*Dillon v. Morano*
      497 F. 3d 247 (2d Cir. 2007)............................................................   19

*Faculty, Alumni and Students Opposed to Racial*
      *Preferences v. New York University Law Review*
      2020 WL 1529311, 18 CV 9184 (S.D.N.Y. Mar. 31, 2020)...........   20

*Galabya v. New York City Bd. of Educ.*
      202 F. 3d 636 (2d Cir. 2000)
      *abrogation on other grounds explained in*
      *Davis-Garrett v. Urban Outfitters, Inc.*
      921 F. 3d 30, 44 (2d Cir. 2019)......................................................   18

*Graham v. Long Island Railroad*
      230 F. 3d 34 (2d Cir. 2000)............................................................   21

*Kunik v. New York City Department of Education*
      2020 WL 508897, 15 CV 9512 (S.D.N.Y. Jan. 31, 2020).............   21

*LittleJohn v. City of New York*
      795 F. 3d 297 (2d Cir. 2015)............................................................   17

*Maclister v. Millenium Hotel & Resorts*
      2018 WL 5886440, 17 CV 6189 (S.D.N.Y. Nov. 8, 2018)...........   19

*Mihalik v. Credit Agricole Cheveuverux North American, Inc.*
      715 F. 3d 102 (2d Cir. 2013)............................................................  23, 24

*Monell v. Department of Soc. Servs.*
     436 U.S. 658 (1978)........................................................................... 13, 22

*Pembaur v. City of Cincinnati*
     475 U.S. 469 (1986)........................................................................... 23

*Stern v. City of New York*
     2015 WL 918754, 12 CV 5210 (E.D.N.Y. Mar. 3, 2015)............... 23

*Vega v. Hempstead Union Free School District*
     801 F. 3d 72 (2d Cir. 2015).............................................................. 16, 20

*Wanamaker v. Columbia Rope Co.*
     108 F. 3d 462 (2d Cir. 1997)............................................................ 22

*Williams v. City of New York*
     2012 WL 3245448, 11 CV 9679  (S.D.N.Y. Aug. 8, 2012).......... 18

## Statutes and Rules

Fourteenth Amendment of
United States Constitution......................................................................... 1

28 U.S.C. sec. 1291................................................................................... 3

28 U.S.C. sec. 1367(a)............................................................................... 2

28 U.S.C. sec. 2201................................................................................... 2

28 U.S.C. sec. 2202................................................................................... 2

42 U.S.C. sec. 1331................................................................................... 2

42 U.S.C. sec. 1343................................................................................... 2

42 U.S.C. sec. 1981...................................................... 1, 12, 13, 16

42 U.S.C. sec. 1983................................................... 1, 3, 12, 13, 16

42 U.S.C. sec. 2000e *et seq*...................................... 16

Fed. R. Civ. P. 12(b)(6)............................................ 2, 13

N.Y.C. Admin. Code sec. 8-101 *et seq*....................................2, 13, 14, 15, 16, 24

# JURISDICTIONAL STATEMENT

Dr. Mauvareen Beverley (Beverley), the Plaintiff in this action and the Appellant in this appeal is an African-American female over the age of sixty, and the former Assistant Vice President, Physician Advisor in Finance/Managed Care of Defendant New York City Health and Hospitals Corp. (H+H). JA, 16-17.[1] Beverley sued H+H as well as officers of H+H, specifically Mitchell Katz (Katz), Stanley Brezenoff (Brezenoff), and Plachikkat V. Anantharam (Anantharam) in the United States District Court.  Katz is the current Chief Operating Officer and President of H+H.  JA, 17. Brezenoff was the Interim Chief Operating Officer and President, while Anantharam was the Chief Financial Officer of H+H and the head of H+H's Central Finance Office (Finance)  JA, 17.

The action was brought against them pursuant to the Civil Rights Act of 1866 (as amended), 42 U.S.C. sec. 1981 and the Civil Rights Act of 1871 (as amended), 42 U.S.C. sec. 1983 to redress their violation of Beverley's equal protection rights secured by the Fourteenth Amendment of the United States Constitution. JA, 15. Beverley alleges *inter alia* that Defendants subjected her to discrimination because of her race and ethnicity of country or origin, and engaged in retaliatory conduct, including wrongfully terminating her employment and thereafter disparaging her

---

[1] The term "JA" refers to the Joint Appendix submitted with this Brief, with the numbers indicating the pages in the JA.

1

to prospective employers.  JA, 25-38.   She seeks in this action monetary damages, injunctive and declaratory relief.  JA, 44-45.

The claims Beverley asserts arise under the United States Constitution and laws of the United States, thereby conferring on the District Court pursuant to 42 U.S.C. sec. 1331, subject matter jurisdiction over her claims.  Pursuant to 42 U.S.C. sec. 1343 the District Court also is conferred with original jurisdiction over Beverley's claims which seek to vindicate her civil rights.  Beverley properly invoked the District Court's jurisdiction, pursuant to 28 U.S.C. sec. 2201 and 2202 to grant her the declaratory relief requested in the action. JA, 15-16.   Beverley also properly invoked the District Court's ancillary jurisdiction, pursuant to 28 U.S.C. sec. 1367(a), with respect to her New York City Human Rights Law claims, she asserts pursuant to N.Y.C. Admin. Code sec. 8-101 *et seq.* (NYCHRL). JA, 15-16.  Beverley alleges that Defendants subjected her to disparate treatment based on her race, ethnicity or country of origin, age and gender in violation of NYCHRL. JA, 25-38.  She also asserts a disparate impact claim against Defendants pursuant to NYCHRL.  JA, 43-44.

In an Opinion & Order entered on March 30, 2020, Honorable Edgardo Ramos granted Defendants' motion made pursuant to Fed. R. Civ. P. 12(b)(6) and dismissed in their entirety, all claims Beverley asserted in her First Amended

Complaint and Jury Demand (FAC). JA, 46-59. On March 30, 2020, the Clerk of

the District Court entered a Judgment dismissing the action in its entirety. JA, 60.

The Opinion & Order constitute a final decision of the District Court, thereby

conferring jurisdiction on this Court, pursuant to 28 U.S.C. sec. 1291, to

adjudicate Beverley's appeal of that final decision.

On April 28, 2020, Beverley timely filed her Notice of Appeal appealing

the Opinion & Order of the District Court. JA, 61. On May 1, 2020, Beverley

filed a Motion for Reconsideration of the Opinion & Order. JA, 62-63. That

motion currently is pending the District Court.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

I.     WHETHER THE DISTRICT COURT APPLIED
       THE CORRECT STANDARD OF REVIEW IN
       DISMISSING ALL CLAIMS ASSERTED
       PURSUANT TO 42 U.S.C. SEC. 1983


II.    WHETHER THE DISTRICT COURT APPLIED
       THE LIBERAL AND NON-EVIDENTIARY
       STANDARD TO THE NYCHRL CLAIMS


## STATEMENT OF THE CASE

### Factual Background

This action arises from Beverley's employment with H+H during the period

2015 through January 2018, in Finance. More specifically Beverley's claims arise

from Defendants' discriminatory conduct during Anantharam's tenure as head of Finance. Beverley is an African-American female Medical Doctor of Caribbean descent who was born in 1952. JA, 16, 26. In or about November 2018, when she commenced this action against the Defendants she was sixty-six years old. JA, 3, 16. Beverley earned an M.D. degree in medicine in 1981 from the University of Buffalo School of Medicine. JA, 26.

In 1984 Beverley completed her internship and residency in Internal Medicine, at Harlem Hospital, one of the several hospitals within the H+H organizational network. JA, 26. In or about 2007 Beverley began her more than a decade long association with H+H, commencing with her employment as an Associate Executive Director of Care Management at the Queens Health Network. JA, 26. Next, H+H employed Beverly as Deputy Executive Director, Care Management at Kings County Hospital. JA, 27.

From 2015 through in or about January 2018, when Defendants terminated her employment, H+H employed Beverley in Finance. JA, 27, 37. She held the title of Assistant Vice President, Physician Advisor. JA, 27. During most of Beverley's tenure in Finance, Brezenoff headed H+H, holding the positions of H+H's President and Interim Chief Operating Officer. JA, 17. In or about 2018 Defendant Katz replaced Brezenoff in those positions. JA, 17.

At the time of Beverley's hiring to work in Finance, Marlene Zurack (Zurack) was head of Finance. JA, 27-28. During the initial period of Beverley's employment in Finance she reported directly to Zurack. In 2016 when Anantharam replaced Zurack as Beverley's boss and as Finance's Chief Financial Officer, she reported to him. JA, 28.

Beverley's duties in Finance included developing initiatives related to medical necessity denials and appeals, involving the eleven acute care hospitals within the H+H network of health care facilities. JA, 27. As was the case when Zurack headed Finance and continuing into part of Anantharam's tenure as the head of Finance, Zurack and Anantharam held one on one meetings with Beverley. JA, 27. At those meetings they discussed with Beverley projects on which she was working, reviewed and approved projects, including required reports generated in connection with the projects, and discussed, reviewed and approved projects and work she proposed to undertake. JA, 27. These one on one meetings were separate and apart from the Finance staff meetings attended by all managers, which discussed general subjects related to the entire staff and department. JA, 27, 36.

Beverley was not the only Finance manager with whom Zurack and then Anantharam held one on one meetings. They did so with respect to all other

managers, as part of their supervision of those managers and the work they performed.   Among the managers with whom they held one and one meetings were Frederick Covino (Covino) an approximately fifty-four years old Caucasian male assistant vice president, and assistant vice presidents Christi Olson (Olson) and  Megan Meagher (Meagher) both of whom are Caucasian females less than forty years of age.  JA, 28-29.

Zurack and then Anantharam also supervised other managers in Finance who held positions below that of assistant vice president, including Robert Melican (Melican) an approximately forty years old Caucasian male Director in Finance.  JA, 28-29.  During those meetings with the foregoing Caucasian managers, Anantharam discussed among other things their projects, their assignments, their work and addressed their concerns.  JA, 28-29.

Shortly after becoming head of Finance and continuing throughout Beverley's employment in Finance, Anatharam required Beverley to perform duties under challenging working conditions, not required of the Caucasians managers.  First, Anantharam reduced and thereafter terminated entirely all one and one meetings with Beverley.  JA, 28-29.  Beverley was the only manager in Finance with whom Anantharam refused to hold and attend one and one meetings. JA, 28-29.  Anatharam continued to hold and attend one on one meetings with the

Caucasian mangers in Finance, including Covino, Olson, Meager and Melican. JA, 28-29. Thus, Anatharam terminated his direct supervision of Beverley, while continuing to directly supervise the foregoing Caucasian managers in Finance.

Instead of directly supervising Beverley, Anantharam assigned that task to Melican, a Caucasian male younger than Beverley, whom Beverley previously supervised and who held a position lower in stature and seniority than Beverley. JA, 30-31. Anantharam did not terminate his direct supervision of the Caucasian mangers in Finance, nor did he assign his supervisory duties of those Caucasian managers, to any subordinate employees. JA, 30-31. Beverley was the only Finance manager whom Anantharam selected for this treatment.

Beverly was the only Finance manager with whom Anantharam refused to meet in any one or one settings regarding her work, her concerns about her assignments and questions regarding her assignments. Anantharam refused to engage in any such discussions with Beverley despite her repeated requests for him to do so. JA, 31-33. Yet he readily responded to the requests of the Caucasian managers to meet with him and to address their concerns. JA, 31-33.

Anantharam removed himself from any direct interaction with Beverley, and instead placed Melican and then Maxine Katz another Caucasian manger in Finance to take charge of Beverley. This circumstance among other things

impeded Beverley's performance of her duties.  For example, Melican and Katz issued error laden reports on projects assigned to Beverley and then tried to ascribe those errors to Beverley, thereby requiring Beverley to devote time and resources correcting their errors and defending herself against false attacks of alleged incompetence and deficient performance.  JA, 35.  Unlike the Caucasian managers who freely attended meetings held to discuss and address their projects, with Anantharam's full knowledge, consent and acquiescence, Maxine Katz and Melican barred Beverley from attending any such meetings.  JA, 36.  They further barred her from having any communications with anyone except them about her projects.  JA, 36.  Anantharam did not impose the foregoing working conditions on any other managers in Finance.

The working conditions Anantharam imposed were not performance related. At no time did Anantharam state that Beverley's performance was in any way deficient, or that it warranted these new working conditions. JA, 27.  Anantharam further singled out Beverley for other treatment not accorded the Caucasian managers by failing to provide her with an assistant and repeatedly denying her request for such an assistant.   JA, 33.

Next, Anatharam questioned Beverley about her Caribbean descent and declared his lack of affinity for the experience of African-Americans in the United

States.  JA, 34.  Another employee in Finance was subject to disparaging remarks about his Caribbean descent, with subordinate Caucasian employees challenging his authority and questioning his competence based on his Caribbean background.  JA, 34.  Not satisfied with terminating his supervision of Beverley and refusal to meet with her to discuss any concerns she may have had, Anantharam barred Beverley and only Beverley from attending any Finance staff meetings, while other managers were permitted to attend them.

Anantharam followed that decision with cutting off all of Beverley's communications with other senior managers in Finance.  JA, 36-37.  Anantharam barred Beverley from sending to and receiving from other managers any communication.  He followed that action with a demand on or about December 18, 2017 that Beverley resign her position within two days.  JA, 37.

Beverley complained to Brezenoff regarding this treatment.  JA, 37. He ignored her complaints, instead of investigating her complaints as required by the EEO Plan.[2]  JA, 25, 37.  A few weeks thereafter, in or abut January 2018, Defendants terminated Beverley's employment.  Beverley next complained to

_____

[2]       The EEO Plan is the Equal Employment Opportunity Program and Affirmative Action Plan for which the Individual Defendants are responsible for implementation and enforcing.  JA, 25.  It establishes procedures and policies for recruitment and retention of managers such as Beverley.  It also establishes procedures for resolution of discrimination complaints.

Defendant Katz regarding the discriminatory treatment and termination, to no avail. JA, 37. He ignored her complaints.

Following her termination Melican assumed Beverley's duties, and was given a raise and a promotion. JA, 37-38. Following Beverley's termination, Defendants hired younger Caucasian employees to perform her duties, and increased the Finance staff. JA, 38. Defendants Katz, working with Brezenoff also hired four Caucasian male employees younger than Beverley to fill senior management positions at H+H. JA, 23-24. Defendants further disparaged Beverley to prospective employers, thereby interfering with her ability to secure comparable employment.

Despite the working conditions Anantharam selectively imposed on Beverley, she was able to achieve positive results on her projects, including developing and implementing a medical necessity denial and appeal process that resulted in recoupment of approximately $8 Million Dollars, accruing $24 Million Dollars in savings for H+H and increasing revenues by more than $8.5 Million Dollars. JA, 29-30.

Defendants did not reward Beverley for her work and achievements in the form of acknowledgment of the good results she achieved or in the form a pay raise or in the form of a promotion, despite her request for a pay raise and

promotion.  JA, 29-30.  Anantharam denied Beverley's requests for a pay raise and promotion, while awarding pay raises and promotions to younger Caucasian managers, such as Covino, Olson and Meagher.  JA, 30.  He did so despite their less than satisfactory job performance.

It is unclear what factors Anantharam used to make the awards of salary increases and promotions for the Caucasian managers, while denying them to Beverley, since Anantharam did not conduct a performance evaluation of senior management, as he was required to do. JA, 35-40.

In addition, these senior managers such as Melican and Covino had exhibited deficiencies in their job performance without facing repercussions for their insufficient performance.  Melican made repeated errors on Beverley's projects of which Anantharam was aware.  JA, 32.  Defendants took no action against him.  In fact, Defendants subsequently promoted Melican to the position of assistant vice president and gave him a salary increase.  JA, 38-39.

Covino's serious errors in executing his duties resulted in that H+H miscalculating its budget needs.  H+H did not take any action to discipline Covino and Schultz for their poor performance.  He kept his position and in the case of Covino received a salary increase.  JA, 20-21, 30.  In Beverley's case Defendants not only falsely accused her of issuing error laden reports, but took steps to

discipline her.  JA, 32.

**Procedural History**

On September 18, 2018, Beverley commenced this action against the Defendant. H+H. JA, 3. She also sues Defendants Katz, Brezenoff and Anantharam (collectively the Individual Defendants) in their official and individual capacities.

On April 5, 2019, she amended her Complaint to assert Six Counts against the Defendants.  JA, 7, 14-45.   The first five counts assert claims of disparate treatment, while the last count alleges a claim of disparate impact.  JA, 38-45.  In Count I Beverley asserts official capacity claims against the Individual Defendants, whom she alleges under color of state law and as final policy makers, violated 42 U.S.C. sec. 1983 based on their discriminatory animus directed against her because of her race and ethnicity.  JA, 38-40.

Beverley's official capacity custom and practice claim, she asserts pursuant to 42 U.S.C. sec. 1983 against the Individual Defendants is set forth in Count II. JA, 40.  Pursuant to 42 U.S.C. sec. 1981 Beverley asserts an individual capacity equal protection claim against the Individual Defendants in Count III.  JA, 41.

Count IV alleges that pursuant to 42 U.S.C. sec 1983, H+H and the Individual Defendants in their individual capacities violated Beverley's equal

protection rights based on racial animus. JA, 42. Count V contains Beverley's NYCHRL race, gender, ethnicity and age based claims against H+H and the Individual Defendants in their individual capacities. JA, 43. In Count VI Beverley asserts a disparate impact claim against them pursuant to the NYCHRL. JA, 43-44.

On May 5, 2019, Defendants moved to dismiss the FAC pursuant to Fed. R. Civ. P. 12(b)(6). JA, 10-11. Beverley opposed the motion. JA, 12-45.

## District Court Decision

In an Opinion & Order dated March 30, 2020 Honorable Edgardo Ramos granted Defendants' motion. JA, 46-59. With respect to Beverley's section 1981 claims against the Defendants, the District Court held that 42 U.S.C. sec. 1983 provided her with the only avenue for redress. JA, 51. The District Court further ruled that Beverley's *Monell*[3] claims which she asserts pursuant to 42 U.S.C. sec. 1983 were insufficient. JA, 57-58. As to the remaining federal claims, the District Court ruled that Beverley did not suffer adverse action, was not subject to retaliation, and was not forced to work in a hostile environment. JA, 52-56.

However the decision is silent on Beverley's claim that Defendants denied her support staff, that Defendants replaced her with a Caucasian male younger

---

[3]     *Monell v. Department of Soc. Servs.*, 436 U.S. 658 (1978).

than she, and that they disparaged her to prospective employers, following her termination. JA, 47-50, 56-57.

In dismissing the NYCHRL claims based on race, ethnicity, age and gender the District Court required Beverley to "demonstrate by a preponderance of the evidence that she was treated less well than other employees *because of* . . .[her membership in a protected class]." JA, 56. It then ruled she had not met that standard. The Decision does not address the retaliation, the hostile work environment and the disparate impact claims Beverley asserts pursuant to NYCHRL. JA, 56-57.

## SUMMARY OF ARGUMENTS

The District Court construed narrowly the federal standard for determining whether Beverley was subject to adverse action. It failed to consider the fact that the conduct in which Defendants engaged interfered with her ability to perform her duties and negatively impacted advancement of her career. The Defendants undertook other actions which meet the federal definition of adverse action, including Defendants denying Beverley an assistant while providing the Caucasian managers with personnel support, replacing Beverley with a younger male Caucasian employee, following her termination, and disparaging her to prospective employers.

Beverley was not required to produce detailed background information regarding the Caucasian managers in Finance, whom Defendants treated more favorably. The fact that they worked in the same department as Beverley, headed by the same person and were subject to the same working conditions suffice at this stage of the litigation to show that they were similarly situated to Beverley.

While Beverley acknowledged that she did not expressly allege she applied for a raise and a promotion, she did make those requests. Accordingly, it would have been a provident exercise of the District Court's discretion to permit her to amend the complaint to so state instead of dismissing it with prejudice.

Requiring details of Beverley's discrimination complaints and overlooking conduct in which Defendants engaged in response to Beverley's complaints improperly resulted in discounting her claim of retaliation.

Application of the federal pleading and the summary judgment evidentiary standard to Beverley's NYCHRL claims was erroneous. Those claims are analyzed independently and are subject to a more liberal standard than the one applicable to federal claims.

# ARGUMENT

## POINT I

### THE FIRST AMENDED COMPLAINT ASSERTS PLAUSIBLE CLAIMS OF DISPARATE TREATMENT AND RETALIATION PURSUANT TO 42 U.S.C. SEC. 1983

Beverley appeals that part of the Opinion & Order which dismissed her claims of disparate treatment and retaliation asserted pursuant to 42 U.S.C. sec. 1983. She does not appeal the decision dismissing her hostile work environment claim nor the dismissal of her section 1981 claim. Beverley also appeals the dismissal of the NYCHRL claims. Beverley met the federal and New York City standards, by asserting plausible claims of discriminatory treatment.

Beverley plausibly alleged that Defendants took adverse action against her and that her race and ethnicity were motivating factors in the treatment to which they subjected her. This is the standard that governs the equal protection claims she asserted pursuant to 42 U.S.C. sec. 1983. *See, Vega v. Hempstead Union Free School District,* 801 F. 3d 72, 87-88 (2d Cir. 2015("once the color of law requirement is met, a plaintiff's 'equal protection claim parallels his Title VII claim.'"). Beverley met that standard.

With respect to the element of adverse action, the FAC alleges numerous

instances of negative consequences that resulted from Anantharam's conduct and the various disadvantages that flowed from that conduct. Those negative consequences that resulted from Anatharam's conduct and the various disadvantages that flowed from them are hallmarks of the federal standard for adverse action. *See, LittleJohn v. City of New York,* 795 F. 3d 297, 312, n. 10 (2d Cir. 2015)(transfer of job responsibilities or significant loss of job responsibilities can constitute adverse action).

While continuing to directly supervise the Caucasian managers in Finance, Anantharam refused to do so with respect to Beverley—by reducing the one on one meetings he held with her and then by terminating those meetings entirely. He then assigned Beverley's former subordinate, Melican to take over that role, and added another Caucasian employee, Maxine Katz to assume his supervisory authority over Beverley.

This reporting hierarchy stripped Beverley of her former supervisory authority over Melican, who while holding a position junior to Beverly was now her supervisor. It also diminished her standing, stature and authority in Finance. These actions significantly reduced her responsibilities as an assistant vice president to her detriment and constitute adverse action. Conduct which results in significant disadvantage such as a set back in an employee's career constitute

adverse action. *Galabya v. New York City Bd. of Educ.,* 202 F. 3d 636, 641 (2d

Cir. 2000) *abrogation on other grounds explained in Davis-Garrett v. Urban*

*Outfitters, Inc.,* 921 F. 3d 30, 44 (2d Cir. 2019).

The new supervisory hierarchy Anantharam created solely for Beverley also

made it more difficult for her to perform her duties, through among other things

Melican and Maxine Katz barring her from attending any meetings held to discuss

the projects on which she was working and which had been assigned to her.

Additionally, they made errors on reports Beverley was assigned to produce, and

then tried to blame her for their incompetence.  They further tried to take credit for

the positive results Beverley achieved in her work.

The District Court construed Beverley's allegation regarding the new

supervisory hierarchy Anantharam created solely for Beverley, as a complaint of

excessive scrutiny.  That is not the basis of Beverley's claim.  Beverley's claim is

that Anantharam singled her out of all of the assistant vice presidents in Finance to

perform her duties under this new reporting hierarchy, which among other things

interfered with her ability to perform her job.

Accordingly, the excessive scrutiny case cited in the Decision as support for

rejecting that claim does not apply and is not dispositive of the issue. *See,*

*Williams v. City of New York*, 2012 WL 3245448 at * 5, 11 CV 9679  (S.D.N.Y.

Aug. 8, 2012), cited in the Decision.

The District Court also did not apply controlling precedent regarding Defendants excluding Beverley from meetings. *See, Dillon v. Moran,* 497 F. 3d 247, 255 (2d Cir. 2007)(exclusion from meetings which disadvantages an employee can constitute adverse action). In this case the FAC alleges the exclusions interfered with Beverley's performance of her duties.

Also absent from the District Court's analysis of Beverley's claims is a review of her allegation that she was the only manager whom Anantharam refused to provide support staff personnel to assist her in her duties and that following her termination Melican replaced her. These actions meet the federal standard of adverse action. *See, e.g., Mcalister v. Millenium Hotels & Resorts,* 2018 WL 5886440 at *4, 17 CV 6189 (S.D.N.Y. Nov. 8, 2018)(denial of support staff constitutes adverse action, where accompanied by more favorable treatment of other employees).

The District Court also appears to have construed Beverley's claims of discrimination as resting primarily on Anantharam's remark about her Caribbean descent and about African-Americans. That is not the case. That remark along with the other conduct in which he engaged properly form the bases of Beverley's claims. *See, Vega,* 801 F. 3d at 88 (allegations which standing alone do not state a

discrimination claim should still be considered since "they help create a context for" Beverley's discrimination claims).

Thereafter, the District Court rejected Beverley claims that Defendants denied her a raise and a promotion, based on the absence of allegations in the FAC that she applied for a raise and a promotion. In opposition to the Defendants' motion to dismiss the FAC, Beverley acknowledged the absence of a direct allegation that she requested raises and promotions, but explained that she did so. Since that was the case, permitting amendment of the FAC would have been a provident exercise of the Court' discretion, instead of dismissing the FAC with prejudice. *See, Faculty, Alumni and Students Opposed to Racial Preferences v. New York University Law Review,* 2020 WL 1529311 at *7, 18 CV 9184 (S.D.N.Y. Mar. 31, 2020).

The various conduct in which Anantharam and the other Defendants engaged also provided a sound basis for the conclusion that at this stage of the litigation the FAC plausibly alleged Beverley's race and Caribbean background were motivating factors for their actions. The allegations in the FAC provide "minimal support for the proposition" that Defendants were "motivated by discriminatory intent." *Vega*, 801 F. 3d at 87.

In addition to describing Defendants' action, the FAC identified Caucasian

managers in Finance whom Defendants treated more favorably than Beverley. Defendants did not require the Caucasian managers to work under terms and conditions they required of Beverley, despite the fact that they all worked in the same department, and all reported to Anantharam.

It is well established that the judgment of whether employees are similarly situated "rests on whether the plaintiff and those [she] maintains were similarly situated were subject to the same workplace standards." *Brown v. Daikin America*, 756 F. 3d 219, 230 (2d Cir. 2014)(quoting *Graham v. Long Island Railroad*, 230 F. 3d 34, 40 (2d Cir. 2000)). Beverley met that standard.

The District Court's ruling that the different specializations and educational backgrounds of Beverley's colleagues undermined her argument that they are similarly situated, overlooks the fact that they all were "subject to the same workplace standards."

It also appears that the District Court required Beverley to meet an evidentiary standard when it relied on a summary judgment decision to rule that she failed to present relevant evidence regarding the comparators. *See, Kunik v. New York City Department of Education*, 2020 WL 508897 at *9, 15 CV 9512 (S.D.N.Y. Jan. 31, 2020), a case the District Court cited to support its ruling.

With respect to Beverley's retaliation claim, the District Court's

requirement that she set forth in the FAC "the substance of conversations" she had when she complained of the discriminatory treatment is not a requirement she must meet to defeat Defendants' motion to dismiss. The applicable standard and which is set forth in the FAC requires the FAC to asserts claims that are "facially plausible and alleges sufficient facts to give the defendant fair notice of the basis of the claim [asserted against them]." *Brown,* 756 F. 3d 229.

The FAC gave Defendants fair notice of the retaliation claim by among other things asserting that between August 2017 and November 2017 Anantharam engaged in discriminatory conduct, following her complaints of discrimination, including demanding her resignation and then terminating her employment.[4]

Beverly also alleged that following her complaints to Brezenoff regarding the demand for her resignation and her subsequent termination, Defendants disparaged her to prospective employers. Blacklisting is a recognized form of retaliation. *See, Wanamaker v. Columbia Rope Co.,* 108 F. 3d 462, 466 (2d Cir. 1997). The District Court did not address this aspect of Beverley's retaliation claim.

The FAC also asserts a viable *Monell* claim against the Defendants. The District Court ruled that it did not. One reason cited for the decision is that the

---

[4]     Beverley did not file an complaint with the EEOC, as stated in the Opinion & Order. JA, 49.

FAC does not allege that Beverley was subject to discrimination because of the Defendants' history of denying African-Americans high ranking positions and promotions and ignoring the poor performance of Caucasian employees. The FAC does assert that claim. JA, 20-21.

The FAC further alleges that the Individual Defendants were the final policy makers at H+H, and were responsible for carrying out those policies, giving Beverley's employment conditions as one example of their application of those policies. JA, 20-25. These allegations support Beverley's *Monell* claims. *See, Stern v. City of New York,* 2015 WL 918754 at *3, 12 CF 5210 (E.D.N.Y. Mar. 3, 2015)(citing *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986); *Amesty Am. v. Town of W. Hartford,* 361 F. 3d 113, 126 (2d Cir. 2004)).

## POINT II

### THE DISTRICT COURT FAILED TO APPLY
### THE LIBERAL AND NON-EVIDENTIARY
### STANDARD TO THE NYCHRL CLAIMS

The District Court dismissed all of Beverley's NYCHRL claims, citing this Court's decision in *Mihalik v. Credit Agricole Cheveuverux North American, Inc.*, 715 F. 3d 102, 110 (2d Cir. 2013). It ruled that Beverley failed to meet the summary judgment or evidentiary standard set forth in that case. The

District Court ruled that as to the plaintiff's gender discrimination claim she must "demonstrate by a preponderance of the evidence that she has been treated less well than other employees *because of her gender."* JA, 56. It appears that the District Court applied that standard to dismiss all of the NYCHRL claims. That is an evidentiary standard not applicable at this stage of Beverley's case. *Vega*, 801 F. 3d at 86.

The District Court also does not address Beverley's retaliation and hostile work environment claims asserted under NYCHRL, which also are subject to a more liberal standard than her section 1983 claims. *Mihalik*, 715 F. 3d at 114 (adverse action need not be material to be actionable nor does the NYCHRL apply the severe and pervasive standard to hostile work environment claims). The Decision also is silent on Beverley's disparate impact claim asserted pursuant to NYCHRL.

## <u>CONCLUSION</u>

For the foregoing reasons, Beverley respectfully requests the Court reverse the Opinion & Order and remand this case to the District Court, together with such other and further relief as the Court deems just and proper.

Dated:     New York, New York
           August 18, 2020

                       Respectfully submitted,

                       LAW OFFICE OF SANDRA D. PARKER

                     By:   <u>/s/ Sandra D. Parker</u>
                            Sandra D. Parker
                            110 East 59th Street, Suite 3200
                            New York, NY 10022
                            (212) 317-2883
                            Attorney for Plaintiff/Appellant

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B), the word limit of Local Rule 32.1(a)(4) because excluding the parts of the document exempted by Fed. App. P. 32(f), this document contains 4,969 words.

This document complies with the typeface requirements of Fed. R. Civ. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using WordPerfect in 14 font Times New Roman.

Dated:     New York, New York
           August 18, 2020